CARTER *v.* LAND, sheriff, *et al.*

No. 8935. MAY 12, 1932.

*James H. Anderson, Frank M. Gleason,* and *M. L. Harris,* for plaintiff.

*T. G. Head* and *R. Carter Pittman,* for defendants.

GILBERT, J. That portion of the Civil Code (1910), § 6062, material to the question declares that "sheriffs and coroners shall publish weekly, for four weeks, in some newspaper published in their counties respectively,—and if there be no such paper published in the county, then in the nearest newspaper having the largest or a general circulation in such county,—notice of all sales of land and other property executed by him." The material part of that excerpt may be further reduced to the question of what is meant by "published in the county" and "the nearest newspaper." In the present case the petitioner bases his claim upon two contentions: first, that his newspaper, Catoosa County Record, is "published in Catoosa County," and second, that if it be decided that under the facts the Catoosa County Record is not "published" in Catoosa County, then there is no newspaper published in Catoosa County, and the Catoosa County Record is the "nearest newspaper" having the largest or a general circulation in the county.

1. The court did not err in sustaining the demurrers and in dismissing the case as to all three of the defendants. Mandamus is a remedy to require the performance of duty by public officers; but a condition precedent to the grant of that stringent remedy is that petitioner must show a clear legal right. The facts alleged in this petition do not show a clear legal right. Under our construction of the allegations of the petition, as applied to the law as it appears in the Code, § 6062, the Catoosa County Record is

not published in Catoosa County. Publishing a newspaper, as contemplated by the General Assembly with reference to the statute in question, means something more than the mere distribution of a newspaper. It means more than having it entered at the post-office for distribution in the mails as alleged. The meaning must be sought with reference to the subject with which it is connected. It depends very much upon the way in which it is used. The Civil Code (1910), § 4, par. 9, which provides rules for the construction of statutes, declares: "In all interpretations, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." The intention of the General Assembly undoubtedly was to aid in building up the locality to be served by the newspaper · advertisements. Students of Georgia history are well aware of the fact that Georgians have always possessed a great degree of local pride and determination to patronize home industry and to build up local institutions. That has been clearly shown by legislation in many instances throughout the history of the State. Keeping these facts in view, we think that the act was meant to bring about, by as much as legislation could contribute, the encouragement of newspapers to own their local plant, or the payment of rent to owners of local real estate, or to encourage the employment of citizens or residents of the locality which the newspaper serves, and in turn to bring about patronage of local merchants, schools, churches, etc. The question has not heretofore been decided in this State, but it has been decided in other States, and the weight of authority is in accord with the construction we adopt. Vickers v. Commissioners, 77 Mont. 316 (250 Pac. 606, 608), an excellent opinion by Mr. Justice Matthews, in which a number of cases are cited and discussed. See also In re Monravia Evening Post, 199 Cal. 263 (248 Pac. 1019).

2. We also hold that the allegations of the petition do not show that the Catoosa County Record, published at Rossville, demanded a finding that it was the "nearest newspaper." The petition alleges that Rossville is within two miles of the Catoosa County line, and that the Dalton News is eight miles from the Catoosa County line. This court does not feel authorized to take judicial notice of any facts with regard to that matter not contained in the allegations of the petition. We do not think that

the words "nearest to the county" mean nearest to the county line. The great bulk of the population may not reside in the vicinity of the county line nearest Rossville. It may be that they are nearest to the county line in the direction of Dalton. Moreover it may be, that, considering the means of transportation, available highway routes or railway lines, either one or the other may be nearest, in the sense of being most accessible to the greatest number of the people of Catoosa County. The statute delegates to named county officials authority to select the advertising medium. It requires the award to be made to the newspaper "having the largest circulation *or* a general circulation in the county." Accordingly, the officers have a discretion as to whether the award shall be made to the one or to the other; that is, to the one having the largest circulation or to the one merely having general circulation. Thus the General Assembly allowed the exercise of a discretion. Also, where there is no newspaper published in the county, then the "nearest" shall be selected. Is it essential to ascertain the exact distance from the county; and if so, from what point in the county shall the measurement be taken? Shall it be by official surveyors? In such circumstances all interested parties would of course wish to have a voice in the selection of the surveyors, and that might mean a corps of surveyors. These contingencies show the necessity for construing the code section liberally and not literally. The General Assembly must have known of the difficulties of requiring a literal compliance. Therefore we hold that it was the intention of the General Assembly that the county officers should be held only to a substantial compliance with the statute liberally construed. Why should the statute name three county officials to make the selection of the official organ of the county? One person might, by a survey, have ascertained the relative distances; but it is doubtful whether any one, with absolute accuracy, could make the decision as to the other qualification, that is "the newspaper having the largest *or* general circulation in the county." How that is to be determined is beyond our solution. At all events, the allegations of the petition are not sufficiently definite to withstand demurrer in that respect, keeping in view that both mandamus and injunction are drastic remedies, and that the applicant must have a clear legal right before he is entitled to either of these remedies. There-

fore we hold that the court did not err in the judgment rendered.

*Judgment affirmed. All the Justices concur, except Hines, J., absent for providential cause.*